UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| DAVID T. SHAHEEN, | : | |
| | : | |
| Plaintiff, | : | Civil Action No.:   12-1168 (RC) |
| | : | |
| v. | : | Re Document Nos.:   9, 12 |
| | : | |
| CHARLES J. SMITH, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

DENYING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT FOR LACK OF PERSONAL JURISDICTION; DENYING PLAINTIFF'S REQUEST FOR JURISDICTIONAL DISCOVERY, AND GRANTING PLAINTIFF'S MOTION FOR TRANSFER OF VENUE

### I. INTRODUCTION

This action arises out of the plaintiff's allegations against the defendants for copyright infringement. The plaintiff, Mr. David T. Shaheen, owns a copyright for a written article titled *Going Public by Direct Filing vs. Reverse Merger*. The plaintiff alleges that the defendants, Charles J. Smith and his company, "How2GoPublic.com," altered the article and posted it online without the plaintiff's permission. The plaintiff moved for Default Judgment and this Court entered an Order, instructing the plaintiff to Show Cause why the Court should not dismiss this case for lack of personal jurisdiction.

After examining the plaintiff's allegations regarding the defendants' contacts in the District of Columbia, the Court finds that it does not have personal jurisdiction over the defendants. The Court also finds that jurisdictional discovery is not warranted. However, in the interests of justice, the Court will transfer the case to the District Court for the District of Nevada.

## II.  FACTUAL BACKGROUND

On July 17, 2012, the plaintiff filed a complaint against the defendants alleging copyright infringement.  Compl. ¶ 1, ECF No. 1.  On September 5, 2012, the defendants were served in Nevada.  *See* Aff. of Mailing, ECF No. 4.  The defendants never filed an answer or other responsive pleading, and on February 4, 2013, upon request of the plaintiff, the clerk entered an order of default.  *See* Aff. for Default, ECF No. 7; Clerk's Entry of Default, ECF No. 8.  On March 15, 2013, the plaintiff filed a Motion for Default Judgment under Federal Rule of Civil Procedure Rule 55, alleging that the defendants had not pled or moved to defend the matter.  *See* Mot. Default J. 2, ECF No. 9.  On April 10, 2013, this Court ordered the plaintiff to Show Cause why this case should not be dismissed for lack of personal jurisdiction.  *See* Show Cause Order, ECF No. 10.  On May 8, 2013, the plaintiff responded to the Show Cause Order arguing that the defendants, who reside in and whose principal place of business is Nevada, had sufficient and substantial contacts within the District of Columbia to confer personal jurisdiction over them in this matter.  *See* Resp. Show Cause Order 6-9, ECF No. 11 ("Resp.").  In the alternative, the plaintiff requested that if this Court did not find personal jurisdiction, that it grant the plaintiff jurisdictional discovery, or transfer the case to the Ninth Circuit.  *See* Resp. at 8-9.

## III.  LEGAL STANDARD

The plaintiff bears the burden of establishing that this Court has personal jurisdiction over the defendants.  *See FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1091 (D.C. Cir. 2008).  Although factual discrepancies in the record must be resolved in favor of the plaintiff, a court need not accept the plaintiff's "conclusory statements" or "bare allegations" regarding the defendant's actions in a selected forum.  *See GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1349 (D.C. Cir. 2000).

"To establish personal jurisdiction over a non-resident, a court must engage in a two-part inquiry: A court must first examine whether jurisdiction is applicable under the state's long-arm statute and then determine whether a finding of jurisdiction satisfies the constitutional requirements of due process." *GTE New Media Servs. Inc.*, 199 F.3d at 1347. The District of Columbia long-arm statute provides that a District of Columbia court has personal jurisdiction over any person as to a claim for relief arising from the person's

> (1) transacting any business in the District of Columbia; (2) contracting to supply services in the District of Columbia; (3) causing tortious injury in the District of Columbia by an act or omission in the District of Columbia; (4) causing tortious injury in the District of Columbia by an act or omission outside the District of Columbia if he regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed, or services rendered, in the District of Columbia . . . .

D.C. CODE § 13-423(a) (2001). Subsection (b) qualifies the reach of the statute by noting that "[w]hen jurisdiction over a person is based solely upon this section, only a claim for relief arising from acts enumerated in this section may be asserted against him." *Id.* § 13-423(b).

Next, Due Process requires a plaintiff to demonstrate "'minimum contacts' between the defendant and the forum state such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). These minimum contacts must be grounded in "some act by which the defendant purposefully avails [himself] of the privilege of conducting activities with the forum state, thus invoking the benefits and protections of its laws." *Asahi Metal Indus. v. Super. Ct. of Cal.*, 480 U.S. 102, 109 (1988). In short, "the defendant's conduct and connection with the forum state [must be] such that he should reasonably anticipate being haled into court there." *GTE New Media Servs. Inc.*, 199 F.3d at 1347 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). The

constitutional limits of due process are generally coterminous with the limits set forth in the long-arm statute. *See Harris v. Omelon*, 985 A.2d 1103, 1105 n.1 (D.C. 2009).

## IV.  ANALYSIS

Applying the District's long-arm statute, the plaintiff claims that §§ 13-423(a)(1)-(4) authorize personal jurisdiction over the defendants. This Court will address the plaintiff's claims in the order in which they were raised.

### A.  Personal Jurisdiction

#### 1.  The Court Does Not Have Personal Jurisdiction under D.C. Code § 13-423(a)(3)

The plaintiff first argues that because the defendants' acts of copyright infringement constitute an intentional tort[1] that originated in and caused the plaintiff harm in the District of Columbia, this Court therefore has jurisdiction over the defendants. Under D.C. Code § 13-423(a)(3), a court may exercise personal jurisdiction over a person who "caus[es] tortious injury in the District of Columbia by an act or omission in the District of Columbia." This provision "requires that both act and injury occur in the District of Columbia." *Helmet v. Doletskaya*, 393 F.3d 201, 208 (D.C. Cir. 2004). *See also Moncrief v. Lexington Herald-Leader Co.*, 807 F.2d 217, 221 (D.C. Cir. 1986) ("the District of Columbia has chosen to distinguish between the act of the defendant and the injury it causes").

Though the District of Columbia Circuit has not yet ruled on where a tortious injury occurs in a copyright infringement case, at least one District of Columbia court has adopted the Second Circuit's logic in *Penguin Group (USA) Inc. v. Am. Buddha*, 640 F.3d 497, 500-501 (2d

---

[1] The D.C. Circuit has found that copyright infringement cases sound in tort for purposes of the long-arm statute. *See Costello Pub. Co. v. Rostelle*, 670 F.2d 1035, 1043 (D.C. Cir. 1981) ("it is well established that a suit for [copyright] infringement is analogous to other tort actions"); *Nu Image, Inc. v. Does 1-12, 322*, 799 F. Supp. 2d 34, 38 (D.D.C. 2011) ("The subsection of the District of Columbia long-arm statute that applies to tort claims—which is used for copyright actions—requires that the tortious injury occur in the District of Columbia. . . .").

4

Cir. 2011).  In that case, the court held, after certifying the question to the New York Court of Appeals, that under the New York long-arm statute, the situs of the injury in an online copyright infringement case is the location, or residence, of the copyright holder.  *Id.*  *See also Nu Image, Inc. v. Does 1-12,322*, 799 F. Supp. 2d 34, 38-39 (D.D.C. 2011) (finding the reasoning of *Am. Buddha* to "tip[] the balance in favor of identifying the situs of the injury as the location of the copyright holder," and finding that under that test, the location of the injury was in California, where the copyright holder resided).  Here, the plaintiff has alleged that his injury occurred in the District of Columbia, because that is where he is located.  *See* Resp. at 6.  The copyright at issue in this case is registered under David Shaheen's name, and under his work address in Washington, D.C.  *See* Compl., Ex. G., ECF No. 1-1.  Though Mr. Shaheen is a District of Columbia-based lawyer, is a member of the District of Columbia Bar, and works in the District of Columbia, he resides in Virginia.  *See* Shaheen Decl. ¶ 1, ECF No. 11-1; Compl. ¶ 4.  The *Am. Buddha* and *Nu Image* test would suggest that the tortious injury, then, occurred in Virginia, and not the District because Virginia is where the copyright holder resides.  The Court need not decide that issue, however, because either way, the plaintiff has not shown that the tortious *act occurred in* the District of Columbia.[2]

As this court has noted, "[i]n cases involving the posting of infringing material on an Internet web site, courts have held that the tort occurs where the web site is created and/or maintained, usually where the server supporting the web site is located, not where the Internet web site can be seen, because that would be literally anywhere the Internet can be accessed."

---

[2] Moreover, it is not clear whether the plaintiff suffered the injury, or his employer did.  The plaintiff refers to the injury he suffered on "his" website.  *See* Resp. at 1-2.  However, the website is not his personal website, but the website of the law firm of which he is a partner, Burk & Reedy, LLP.  Burk & Reedy, LLP is not a party to this suit.  Either way, the distinction is not material in this case because, as set forth above, the plaintiff cannot show that the tortious act occurred in the District.

5

*Kline v. Williams*, No. Civ. A. 05-01102 (HHK), 2006 WL 758459, at *4 (D.D.C. Mar. 23, 2006) (quoting *Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 567 (S.D.N.Y. 2000)). Here, although the plaintiff alleges that the defendant maintains a technical contact for its website in the Washington, D.C. metropolitan area (Herndon, VA), nothing in the plaintiff's Response or Complaint demonstrates that the defendants' website was created, is maintained, or has its servers in Washington, D.C.[3] *See* Resp. at 3. Rather, the defendant's website is registered under a Nevada address, lists an administrative contact located in Oregon, and lists a technical contact with a Virginia address. *See* Resp., Ex. 5 at 2, ECF No. 11-5. Mere access to the defendants' website from the District is insufficient to establish that the tortious "act" occurred *in* the District. *See, e.g.*, *GTE New Media Servs. Inc.,* 199 F.3d at 1346 ("[M]ere accessibility to an Internet site in the District is [not] enough of a foundation upon which to base personal jurisdiction."). Because the plaintiff has not demonstrated that *both* act and injury occurred in Washington, D.C., this Court cannot find that personal jurisdiction is proper under § 13-423(a)(3).

The plaintiff argues that personal jurisdiction is also proper under § 13-423(a)(3) because the defendants are subject to the terms and conditions of the plaintiff's law firm's website, www.burkreedy.com, which designate the District of Columbia as the proper venue for any and all actions between the user of the website and Burk & Reedy. *See* Resp. at 1-2, 6; Ex. 2 at 2, ECF Nos. 11, 11-2 ("you agree that personal jurisdiction and venue for any and all actions shall be exclusively in the District of Columbia . . . and you hereby specifically waive any objections

---

[3] Courts have recognized the unique jurisdictional character of the Washington, D.C.-Metropolitan Area. *See, e.g.*, *Sweetgreen, Inc. v. Sweet Leaf, Inc.*, 882 F. Supp. 2d 1, 6 (D.D.C. 2012) ("This Court recognizes that the metropolitan Washington, D.C. area functions, in many respects, as a unified legal and commercial community. This fact, however, does not dilute the requirement that a defendant business avail itself of the benefits of doing business in the District of Columbia before it can be sued here.").

pertaining to personal jurisdiction or venue in any actions between *you and Burk & Reedy LLP*.") (emphasis added). This argument, sounding in forum-selection,[4] is unavailing. "A forum-selection clause is . . . a distinct contract between the parties to settle disputes in a particular forum . . . ." *Marra v. Papandreou*, 216 F.3d 1119, 1123 (D.C. Cir. 2000). Thus, the terms and conditions on Burk & Reedy's website may be binding between Burk & Reedy and the defendants *if* Burk & Reedy were a party to this action, and *if* the defendants did indeed access the article from Burk & Reedy's website. Importantly, however, Burk & Reedy is not a party in this action; rather its employee David Shaheen is the sole plaintiff. In addition, there is no indication from the facts how the defendants accessed the plaintiff's article. The plaintiff alleges in his Response that the defendant copied the article from Burk & Reedy's website. *See* Resp. at 1. However, in his complaint, the plaintiff also alleges that the defendant agreed to work with Bob Koveleski, President of Bizfin, a site that also published the plaintiff's article, with his permission. *See* Compl. ¶¶ 13-15. It is entirely possible that the defendants accessed the article from that website.[5] Because the forum-selection clause is exclusive to actions between Burk & Reedy—not party to this suit—and the defendants, and because the plaintiff has not produced any facts showing how the defendants accessed the article, the forum-selection clause is inapplicable in this matter.

---

[4] Forum-selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). If a forum-selection clause would make it "so gravely difficult," impractical, or difficult, or contravenes public policy, the Supreme Court has held that such a clause should be invalidated. *See Gipson v. Wells Fargo & Co.*, 563 F. Supp. 2d 149, 154 (D.D.C. 2008) (citing *M/S Bremen,* 407 U.S. at 18).

[5] Either way, there is nothing in the record to suggest that the defendants contractually bound themselves or otherwise submitted themselves to the forum-selection clause on the plaintiff's law firm's website.

**2. The Court Does Not Have Personal Jurisdiction under D.C. Code § 13-423(a)(4)**

The plaintiff next claims that personal jurisdiction is proper under § 13-423(a)(4) because the defendants "caused tortious injury in the District of Columbia"[6] where defendants "regularly do[] or solicit[] business, engage[] in any persistent course of conduct, and/or derive[] substantial revenue from goods used or consumed, or services rendered." *See* Resp. at 7.

The Court does not find that personal jurisdiction is proper under § 13-423(a)(4) for two reasons. First, the plaintiff has not produced any facts showing that the defendant solicits business, engages in any persistent course of conduct, and/or derives substantial revenue from any activity conducted in the District. The plaintiff's allegation that the defendants solicit business across the country and have clients in the District of Columbia "cannot be based solely on the ability of District residents to access the defendant's websites." *GTE New Media Servs. Inc.,* 199 F.3d at 1350. Moreover, "for a website to constitute a persistent course of conduct within the District of Columbia, it must meet a certain level of interactivity [with users in the District of Columbia]." *See Bible Way Church of Our Lord Jesus Christ World Wide, Inc. v. Showell*, 578 F. Supp. 2d 164, 171 (D.D.C. 2008). The plaintiff has not demonstrated any facts showing that the defendant's website targeted users specifically within the District. Finally, the plaintiff's belief that the defendants "must have derived substantial income from the District of Columbia and must have received substantial income from referrals associated with the infringed," is unsubstantiated and highly speculative. *See* Resp. at 7. Mere speculation as to all these claims will not establish personal jurisdiction over the defendants. *GTE New Media Servs. Inc.,* 199 F.3d at 1349.

---

[6] As set forth above, it is unclear whether the tortious injury occurred in the District of Columbia or Virginia. Regardless, the distinction is immaterial because the Court finds that the defendants do not otherwise satisfy the requirements of § 13-423(a)(4).

Second, the plaintiff's assertion that the defendants' interactions with the SEC establish minimum contacts is subject to the government contacts principle. The modern-day government contacts principle was first articulated by the District of Columbia Court of Appeals in a case interpreting the reach of the District's new long-arm statute. *See Envtl. Research Int'l, Inc. v. Lockwood Greene Eng'rs, Inc.,* 355 A.2d 808, 813 (D.C. 1976). In that case, the court found that the basis for the government contacts principle was rooted "in the unique character of the District as the seat of national government and in the correlative need for unfettered access to federal departments and agencies for the entire national citizenry." *Id.* It went on to hold that "contacting federal governmental agencies is not a basis for the assertion of in personam jurisdiction." *Id.* The court based its holding on the Due Process Clause "minimum contacts" analysis, but in a footnote, indicated that the First Amendment might also provide a basis for the principle. *See id.* at 813 n.11. Two years later, the District of Columbia Court of Appeals noted a tension in the rationale of *Envtl. Research* as to whether the government contacts principle might provide an exemption from personal jurisdiction where otherwise minimum contacts had been established. *See Rose v. Silver*, 394 A.2d 1368, 1373-74 (D.C. 1978). The court answered that question, holding that in the context of the government contacts principle, "the First Amendment provides the only principled basis for exempting a foreign defendant from suit in the District of Columbia, when its contacts are covered by the long-arm statute and are sufficient to withstand a traditional due process attack." *Rose*, 394 A.2d at 1374. The guidance from the *Rose* court suggests, then, that personal jurisdiction could be established if the government-contact communication was not protected by the First Amendment, and minimum contacts could be established.[7]

---

[7]   The plaintiffs in *Rose* never asserted that the D.C. long-arm statute violated the

9

Since then, there has been some confusion in the lowers courts as to the precise limit of the doctrine. *See, e.g.*, *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 786-87 (D.C. Cir. 1983) (noting that since *Rose*, the "court has failed to clarify any possible conflict" and recognizing the "tension between *Envtl. Research* and *Rose*"); *Hayes v. FM Broadcast Station WETT*, 930 F. Supp. 2d 145, 148 (D.D.C. 2013) (explaining that "there may be complexities in the government contacts doctrine that are not captured by" the simple formulation articulated in *Envtl. Research* that a party's contacts with government agencies do not enter the jurisdictional calculus). The most recent District of Columbia Court of Appeals case to address the issue decided not to resolve the tension between the cases at all. Instead, the court noted that the *Rose* decision "generated controversy," and went on to say that "[w]e do not attempt to resolve that uncertainty here. Instead we hold that a fraud exception [to the government contacts principle] is appropriate even if rationales apart from the First Amendment support the government contacts doctrine." *Companhia Brasiliera Carbureto De Calcio v. Applied Indus. Materials Corp.*, 35 A.2d 1127, 1133 n.5 (D.C. 2012). Regardless of the tension left open by the District of Columbia Court of Appeals as to the basis of the government contacts principle, it is clear "that the doctrine at least precludes personal jurisdiction that would be predicated on the submission of non-fraudulent petitions (within the meaning of the First Amendment) to the federal government." *Hayes*, 930 F. Supp. 2d at 149-150. *See also Companhia Brasiliera*, 35 A.2d at 1134; *Naartex*, 722 F.2d at 787 (explaining that "contacts . . . which implicate the first amendment guarantee 'to petition the Government for redress of grievances'" would be exempt [and therefore insufficient to confer

---

First Amendment, and the court remanded the case so that the plaintiffs could raise that argument in the trial court. *See Rose v. Silver*, 394 A.2d 1368, 1374 (D.C. 1978). Thus, to the extent the *Rose* ruling causes tension with *Envtl. Research*, it is in dicta only.

jurisdiction] under either formulation of *Rose* or *Envtl. Research*).[8]

The *Companhia* court further explained that "[c]ases in which the fraud exception applies should be rare indeed." 35 A.2d at 1134. It went on to note that a defendant forfeits the protection of the government contacts exception where it "uses the government as an instrumentality of fraud . . . and thereby causes unwarranted government action against [the plaintiff] . . . ." *See id.* Accord *Morgan v. Richmond School of Health and Technology, Inc.*, 857 F. Supp. 2d 104, 109 (D.D.C. 2012) (explaining that the holding of *Companhia* is very narrow, and applies only to cases where the defendant "fraudulently induced unwarranted government action against the plaintiff"). Here, the plaintiff has alleged that the defendant has been subject to SEC enforcement actions regarding fraudulent schemes and filings with the SEC. *See* Resp. at 2, Ex. 3, ECF No. 11-3. Such fraudulent filings, however, cannot provide a basis for personal jurisdiction in this case for two reasons. First, the fraudulent filings are not petitions that "caused unwarranted government action" against the plaintiff—no government agency took action against the plaintiff in this case as a result of the defendants' prosecution by the SEC for fraudulent conduct. Therefore, the narrow exception to the government contacts principle articulated in *Companhia* is inapplicable here.

Second, the fraudulent filings have nothing to do with the plaintiff's underlying claim of copyright infringement—they pertain to fraudulent conduct related to other corporations not party to, or at issue in, this case. The D.C. long-arm statute only reaches a cause of action that arises from the defendant's jurisdictional ties to the District. *See* D.C. CODE § 13-423(b) (2001)

---

[8] The First Amendment right to petition has been understood broadly to extend "to all departments of the Government." *California Motor Transp. Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972). It also includes "activities before government agencies designed to protect commercial or proprietary interests." *See Lex Tex Ltd., Inc. v. Skillman*, 579 A.2d 244, 249 n.9 (D.C. 1990) (citing *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983)).

("when jurisdiction over a person is based solely upon this section, only a claim for relief *arising from acts* enumerated in this section may be asserted against him.") (emphasis added). *See also Willis v. Willis*, 655 F.2d 1333, 1336 (D.C. Cir. 1981) ("[t]he District of Columbia courts have interpreted section 13-423(b) as a bar to claims unrelated to the acts forming the basis for personal jurisdiction."); *FC Inv. Grp. LC v. IFX Mkts., Ltd.*, 479 F. Supp. 2d 30, 39 (D.D.C. 2007), *aff'd,* 529 F.3d 1087 (D.C. Cir. 2008) ("plaintiff's jurisdictional allegations must arise from the same conduct of which it complains"); *Novak-Canzeri v. Saud*, 864 F. Supp. 203, 206-207 (D.D.C. 1994) (explaining that "[t]he claim itself must have arisen from the business transacted in the District or there is no jurisdiction" and finding no jurisdictional nexus between the plaintiff's underlying breach of contract claim where "there is no statement that the jurisdictional allegations set forth there necessarily relate to the same activity as the breach of contract allegations"); *Berwyn Fuel, Inc. v. Hogan*, 399 A.2d 79, 80 (D.C. 1979) (finding no personal jurisdiction under §13-423(b) where, even though the appellant made fuel deliveries to the District of Columbia, the tortious injury in that case did not arise from *those* deliveries to the District, but from an accident that occurred in Maryland). Here, the defendants' jurisdictional ties to the District are fraudulent filings with the SEC related to the defendants' other companies—not filings that give rise to the plaintiff's underlying copyright infringement claim. Therefore, even if the SEC enforcement actions based on the fraudulent filings could confer jurisdiction on the defendants, it would only be to the extent the tortious conduct arose from those filings, which in this case, it did not at all.

     In addition to the SEC enforcement actions, the plaintiff has asserted that the defendants' filings and other contacts with the SEC and FINRA, a nongovernmental organization that issues the defendants' stock ticker symbols for their companies, establishes personal jurisdiction over

the defendants.  *See* Resp. at 7.  Such interactions are also insufficient to confer personal jurisdiction on the defendants.  *See Inv. Co. Inst. v. United States*, 550 F. Supp. 1213, 1216-17 (D.D.C. 1982).  The defendants in *Inv. Co. Inst.* were banks who, like the defendants in the instant case, regularly interacted with the SEC and the National Association of Securities Dealers ("NASD"),[9] FINRA's predecessor, and other governmental or quasi-governmental agencies through filings, correspondence, and other matters that would allow the banks to operate lawfully.  550 F. Supp. at 1217-18.  Those were the only connections that the defendants had with the District of Columbia.  This court concluded that it had no personal jurisdiction over those banks, because their dealings with the SEC, NASD, and other governmental or quasi-governmental agencies were their only contacts with the District of Columbia and fell within the federal government contacts principle.  *See id.*  The court also noted that despite the tension of *Envtl. Research* and *Rose*, "the fact that [the] activities [were] undertaken for 'commercial' purposes would not deprive them of [] First Amendment protection . . . for the First Amendment protects 'commercial' speech and the right of petition as well as that undertaken for less mercenary reasons."  *Id.* at 1217.  Thus, the defendants' filings and correspondence with the SEC and FINRA fall within the government contacts principle, and this Court cannot establish personal jurisdiction over the defendants under § 13-423(a)(4).

More importantly, and as set forth above, even if the defendants' contacts with the government were enough to constitute regular business in the District or a persistent course of conduct in the District, § 13-423(b) specifies that the tortious act must arise from those contacts.  *See* D.C. CODE § 13-423(b).  *See also Berwyn Fuel, Inc.*, 399 A.2d at 80 ("the jurisdiction

---

[9] In 2007, FINRA absorbed the NASD and the member operations of the New York Stock Exchange.  *See* finra.org (http://www.finra.org/Newsroom/NewsReleases/2007/p036329).  As part of that consolidation, FINRA now oversees the functions previously overseen by NASD.  *See id.*

thereby conferred [by §13-423] is restricted to claims arising from the particular transaction of business carried out in the District."). *Accord Ross v. Product Dev. Corp.*, 736 F. Supp. 285, 289 (D.D.C. 1989) ("the plaintiff's claim must have arisen from the defendant's *business* in the District") (emphasis in original). The "business" the defendants have had with the SEC and FINRA—filing registration statements, being part of SEC enforcement actions (unrelated to the plaintiff's copyright), and getting ticker symbols—does not give rise to the plaintiff's underlying claim of copyright infringement; it has nothing to do with the plaintiff's claim of copyright infringement. Therefore, regardless of whether those government contacts are enough to constitute minimum contacts, the tort of copyright infringement did not arise from those contacts and therefore they do not suffice to confer personal jurisdiction on the defendants.

### 3. The Court Does Not Have Personal Jurisdiction under D.C. Code § 13-423(a)(1)-(2)

The plaintiff next claims that personal jurisdiction is proper under § 13-423(a)(1)-(2) because the defendants "transact business in the District of Columbia" and/or "contract[] to supply services in the District of Columbia" by (1) regularly traveling to meet with FINRA and the SEC to file documents, (2) meeting with clients in the District, (3) advertising to and accepting clients from anywhere in the United States, including the District, and (4) serving as officers in a separate corporation that has substantial contacts with the District. *See* Resp. at 7-8.

The Court, again, disagrees. First, the defendants' interaction with FINRA and the SEC is not enough to confer jurisdiction on them, as set forth above. *See, e.g.*, *Envtl. Research Int'l*, 355 A.2d at 813. Second, the plaintiff has not produced any facts that demonstrate how many—if any—clients the defendants have in Washington, D.C. Third, the plaintiff has not produced any evidence beyond the conclusory allegations that the defendants advertise and solicit business from the District of Columbia. Finally, the allegation that the defendants are "officers in

corporations which are either based in the District of Columbia and/or have substantial contacts to the District of Columbia" is not supported by any facts on the record. *See* Resp. at 8. The only piece of evidence produced regarding any other corporation is a stock issuance record for the company "MyOtherCountryClub.com," which is registered in Reno, Nevada and organized under the laws of Nevada. *See* Resp., Ex. 6, ECF No. 11-6. The only connection between that corporation and the District is that it filed a Registration Statement with the SEC. Again, such a filing is subject to the government contacts principle, and therefore not enough to confer personal jurisdiction on the defendants. And as set forth above, even if such interaction did suffice for purposes of minimum contacts, § 13-423(b) requires that the tortious act arise from those contacts, which in this case alleging copyright infringement, it did not. *See Berwyn Fuel, Inc.*, 399 A.2d at 80.

Because the plaintiffs have not demonstrated that the defendants transact any business or contract to supply services in the District, such that "maintenance of the suit does not offend traditional notions of fair play and substantial justice," this Court cannot find that personal jurisdiction is proper under § 13-423(a)(1)-(2). *Int'l Shoe Co.*, 326 U.S. at 316.

### B. Jurisdictional Discovery

A plaintiff is entitled to jurisdictional discovery "if a party demonstrates that it can supplement its jurisdictional allegations through discovery." *GTE New Media Servs. Inc.*, 199 F.3d at 1351. And although discovery should be freely permitted, "mere conjecture or speculation" that discovery could lead to personal jurisdiction over the out-of-state defendants will be insufficient for a district court to permit discovery. *FC Inv. Grp. LC,* 529 F.3d at 1094. Therefore, a plaintiff must include *some* facts about what additional discovery could produce. *See Cheyenne Arapaho Tribes of Okla. v. United States*, 558 F.3d 592, 596 (D.C. Cir. 2009);

*Mwani v. bin Laden,* 417 F.3d 1, 17 (D.C. Cir. 2005).  Finally, "it is inappropriate" to subject a defendant to discovery if the plaintiff does not make a "detailed showing" of how jurisdictional discovery would lead to new, relevant information.  *See Bible Way Church*, 578 F. Supp. 2d at 171.

The plaintiff has not demonstrated how jurisdictional discovery could supplement its allegations.  The plaintiff has not included what type of discovery he will engage in, any facts of what he would gain from additional discovery, nor how additional discovery would be beneficial.  *See* Resp. at 8; *see also Cheyenne Arapaho Tribes of Okla.*, 558 F.3d at 596.  The plaintiff only asserts that discovery should be "freely given," but does not assert any other facts that establish that his request for discovery is more than a speculative fishing expedition.  *See id.; see also FC Inv. Grp. LC*, 529 F.3d at 1094.  Because the plaintiff has not indicated how discovery could provide new and relevant information that could supplement the plaintiff's existing jurisdictional claims, the Court declines to grant the plaintiff's request for jurisdictional discovery.

### C.  Venue Transfer

Even though a district court lacks personal jurisdiction over defendants, "the district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).  Transfer is generally appropriate "when procedural obstacles 'impede an expeditious and orderly adjudication on the merits,'" which includes "lack of personal jurisdiction, improper venue and statute of limitations bars." *Sinclair v. Kleindienst*, 711 F.2d 291, 293-94 (D.C. Cir. 1983).  "The decision whether a transfer or a dismissal is in the interest of justice, however, rests within the sound discretion of the district court." *Naartex*, 722

F.2d at 789.

Venue for this action is proper in "a judicial district where any defendant resides," or "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no district in which an action may otherwise be brought . . . any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(1)-(3). The defendant Charles J. Smith lives, resides, and does business in Reno, Nevada. Compl. ¶ 6. The defendant company "How2GoPublic.com" is organized under the laws of Nevada, with its principal place of business in Nevada. Compl. ¶ 5. Therefore, the District of Nevada district court may exercise personal jurisdiction over the defendants, and that is where venue is proper. In the interests of justice, the Court will transfer this action to the United States District Court for the District of Nevada.

## V.  CONCLUSION

For the foregoing reasons, this Court finds that it does not have personal jurisdiction over the defendants, that jurisdictional discovery is not warranted, and hereby transfers the case to the District Court for the District of Nevada.

An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  November 13, 2013                                                                    RUDOLPH CONTRERAS
                                                                                                                       United States District Judge